1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
Yeremey Krivoshey (State Bar No. 295032)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ykrivoshey@bursor.com
        slitteral@bursor.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

JENNIFER MIKALACKI, individually and on behalf of all others similarly situated,

                Plaintiff,

   v.

BINDLE BOTTLE LLC

              Defendant.

Case No.

**CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

1   Plaintiff Jennifer Mikalacki ("Plaintiff"), individually and on behalf of all others similarly

2   situated, alleges the following against Defendant Bindle Bottle LLC ("Bindle" or "Defendant").

3   Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon

4   information and belief, except as to the allegations specifically pertaining to herself, which are based

5   on personal knowledge.

6   <u>**NATURE OF THE ACTION**</u>

7   1.   This is a class action against Defendant Bindle Bottle LLC for the manufacture and

8   sale of Bindle Bottles ("Bindle Bottles" or "the Products"), all of which suffer from an identical

9   defect.  The Products are defective because they contain extremely high levels of lead, a dangerous

10   neurotoxin (the "Defect").  The Defect renders the Products unsuitable for their principal and

11   intended purpose and therefore the Products are completely worthless at the point of purchase.

12   2.   Based on Defendant's own words—as written in its ineffective and, at best,

13   mismanaged recall—"[a]cute lead poisoning may cause a wide range of symptoms, including

14   abdominal pain, muscle weakness, nausea, vomiting, diarrhea, weight loss, and bloody or decreased

15   urinary output.  Children are particularly vulnerable to lead poisoning.  If a child is exposed to lead

16   for a protracted period of time (e.g., weeks to months) permanent damage to the central nervous

17   system can occur.  This can result in learning disorders, developmental defects, and other long-term

18   health problems.  Clinical signs in dogs with acute lead poisoning may include lethargy, anorexia,

19   behavioral changes, ataxia (wobbly gait), tremors, and seizures."

20   3.   In addition, the Products contain, or risk containing, bisphenol A ("BPA"), a chemical

21   linked to fertility problems and certain cancers, despite Defendant's express representations that the

22   bottles are "100% BPA FREE."

23   4.   Despite these risks, Defendant has rested on its laurels, asking the CPSC, FDA, and

24   the media to do its bidding.  But these efforts have been unsuccessful.  Defendant's disastrous recall

25   has left consumers uninformed and confused.  Defendant began its recall offering one remedy—a

26   refund—only to replace that remedy with another, an ineffective repair that few consumers have

27   taken advantage of given their loss of trust in Bindle and continued concerns that Defendant has

28

underreported the gravity of the problem.  After all, no reasonable consumer—of the few who did hear of Defendant's recall—would desire to continue using Defendant's Products given the serious risks posed to their health.

5.      Consequently, consumers are still very much at risk of severe health problems attributed to the Defect.

6.      Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of California consumer protection laws, breach of implied warranty under the Song-Beverly Act, fraud, and Unjust Enrichment

**PARTIES**

7.      Plaintiff Jennifer Mikalacki is a resident of Oakland, California and a citizen of the State of California.  Plaintiff purchased Defendant's Products twice.  First, in approximately May 2019, Plaintiff purchased two 24oz Bindle Bottles online from Amazon.  In addition, Plaintiff purchased one 20oz Bindle Bottle from Defendant's online website.

8.      Prior to her purchase, Ms. Mikalacki saw that Defendant's Products could be used safely as bottles for drinking water and other of her chosen beverages.  Ms. Mikalacki saw and appreciated that Defendant's bottles were BPA free, and took that as a representation and warranty that Defendant ensured that its Products were in fact free of BPA.  Ms. Mikalacki did so because she cares about the presence of BPA and other contaminants even if in small amounts.  Accordingly, those representations and warranties were part of the basis of the bargain in that she would not have purchased the Products or would not have purchased them on the same terms if the true facts about their contents had been known.

9.      Plaintiff would not have purchased the Products had she known that the Products suffered from the Defect.  Upon learning of the Defect, Plaintiff stopped using the Products and still has unused Products in her possession.  Because of the Defect, Plaintiff can no longer use the Products and, accordingly, has suffered economic loss.

10.     Defendant Bindle Bottle LLC is a California company with, upon information and belief, its principal place of business in Carlsbad, California.  Defendant manufactures, sells, and distributes the Products throughout the United States.

## JURISIDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

12.     This Court has personal jurisdiction over Defendant because Defendant is incorporated and has its principal place of business in California.

13.     Venue is proper in this Court under 28 U.S.C § 1391(b) because Defendant transacts significant business within this District and because Plaintiff purchased and used the Products in this District.

14.     The practices described herein were conceived, reviewed, approved, and otherwise controlled from Defendant's nerve center, its headquarters in Carlsbad, California.  Employees at Defendant's headquarters directed the production and assembly of the Bindle Bottle.  Promotional activities and literature were developed and coordinated at, and emanated from, Defendant's California headquarters.  The misrepresentations and omissions alleged herein were made by Defendant's employees based in California and were contained, among other places, on Defendant's website, which is maintained by Defendant's employees based in California.  Additionally, every purchase on Defendant's website comes with a Choice of Law Provision, identifying California as the proper venue and California law as the applicable law.  Accordingly, the application of California law is appropriate for non-California residents as the activity amounts to injury in California.

## COMMON FACTUAL ALLEGATIONS

### I.  The Defect and Ensuing Recall

15.     Defendant is a manufacturer and seller of Bindle Bottles, which are water bottles that contain a bottom compartment allowing consumers to place additional items, such as food.

1
2
3
4
5
6
7
8



9       16.     Defendant sells these bottles in a variety of sizes.

10      17.     Unfortunately for consumers who purchased these Products, they were not purchasing

11  products as marketed and sold and that would enable them to safely use the bottles.

12      18.     Indeed, the Products are defective because they pose a significant risk in that they

13  contain exceedingly high amounts of lead, a neurotoxin.  The Defect renders the Products unsuitable

14  for the principal and intended purpose, and thus the Products are worthless at the point of sale.

15      19.     On February 10, 2023, a report was published by Consumer Reports, in which it tested

16  three Bindle Bottles for lead.  Specifically, Consumer Reports "tested the 'sealing dot,' a circle of

17  solder in the bottom storage compartment of the bottle that holds the parts of the bottle together."[1]

18      20.     The test results demonstrated that "the lead content of the dot ranged from 90,800

19  parts per million to 155,000 parts per million."[2]

20      21.     Ashita Kapoor, an associate director of product safety at Consumer Reports who

21  oversaw the tests, noted that the Bindle Bottles had "exposed lead levels that are approximately **<u>1,100</u>**

22  **<u>times that of the levels legally allowed</u>** in many consumer products."

23      22.     In addition, the report noted that "[a]nything that touches [the sealing dot] directly

24  can get contaminated with lead, and lead dust can get on whatever is in the bottle just by being near

25  it."

26

27  _____

28  [1] CITE
    [2] *Id.* (emphasis added).

23.     No amount of lead is known to be safe.[3]  Exposure to lead may cause anemia, weakness, and kidney and brain damage.[4]  Lead can affect almost every organ and system in the body.  Lead accumulates in the body over time, and can lead to health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.  Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.  Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored.  Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[5]

24.     Upon being informed of the Consumer Reports testing, Defendant first announced on its website that "we are offering existing customers a full refund."[6]

**CONSUMER SAFETY**

Bindle Bottle LLC

02/09/2023

We have learned that a small soldering dot in the bottom storage area of our bottles contains lead.  While we believe this poses a negligible health risk to our customers, we are offering existing customers a full refund.  In addition, we are working on a solution that will retrofit existing bottles by making this soldering dot completely inaccessible.  Please note that if your bottle has a black rubber disk (about the size of a penny) in the bottom storage area, then you received the new bottle design and do not have any accessible lead in the storage area.

We want you all to know that we are willing to do whatever is necessary to deliver on our main priority, which is the safety and best interests of our customers.

Please email us at info@bindlebottle.com using the format below so we can quickly and accurately process your request.

Name:

Order Number:

Shipping Address:

25.     Then, Defendant immediately modified its stance on providing refunds, removing the above statement from its website, leaving consumers confused, frustrated, and unsure of how to proceed.

---

[3]  *See*  https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last accessed Apr. 7, 2022).
[4]  Centers for Disease Control and Prevention, "Health Problems Caused by Lead," *The National Institute for Occupational Safety and Health (NIOSH)*, https://www.cdc.gov/niosh/topics/lead/health.html#:~:text=Exposure%20to%20high%20levels%20of,a%20developing%20baby's%20nervous%20system. (last accessed Apr. 7, 2022).
[5]  State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," https://www.health.ny.gov/publications/2584.pdf (last accessed Apr. 7, 2022).
[6]  *See* https://web.archive.org/web/20230217072428/https://bindlebottle.com/pages/consumer-safety (Last accessed Feb. 27, 2023).

26.     In its current iteration of the recall, Defendant solely offers an at-home repair kit. That is, consumers are not given the option of obtaining a refund.  Instead, consumers must trust that Defendant has isolated the scope of the problem and provided an effective repair—a momentous ask from a company that has inordinately abused the public's trust.

27.     In addition, Defendant has taken down its return policy from its website, which had stated that "Products purchased on the Bindle Bottle website can be returned to Bindle Bottle for a full refund within 30 days of the purchase date."[7]

**RETURNS**

*Policy and Procedure*

We want you to be completely satisfied with your Bindle Bottle and your overall Bindle Bottle experience. Products purchased on the Bindle Bottle website can be returned to Bindle Bottle for a full refund within 30 days of the purchase date. In order to be eligible for return, products must be in an unused condition with their original packaging intact.

Feel free to contact us at hello@bindlebottle.com for any additional questions on exchanges and refunds. Please note that products must be in the condition in which they were originally received for us to successfully process your exchange or refund. Used bottles are not eligible for returns.

Returned items should be shipped to the address below for processing:

Bindle Bottle
Attn: Returns
1620 Hygeia Ave
Encinitas, CA 92024

**All international sales are final**

Cheers!

The Bindle Bottle Team

28.     Defendant has denied consumers the ability to obtain adequate relief, despite its initial statement that a full refund was the adequate remedy.

29.     Accordingly, Defendant's voluntary recall is willfully inadequate.

**II.     Bindle Bottles Contain (or risk containing) BPA**

30.     In addition, Consumer Reports tested the outside of the three Bindle Bottles for BPA, a "chemical linked to fertility problems and certain cancers."

31.     In doing so, Consumer Reports detected the presence of BPA in two of the three bottles.

32.     Critically, Defendant expressly represents on the Products packaging that the bottles are "100% BPA Free."

---

[7] https://web.archive.org/web/20221130022306/https://bindlebottle.com/pages/returns (last accessed Feb. 27, 2023).

1
2
3
4
5
6
7
8
9



10    33.    In addition, Defendant states on its website that the Products are "BPA-free."

11    34.    The foregoing statements on the website and the label demonstrate that Defendant

12  knows that reasonable consumers consider it important that the Products are safe and free from BPA.

13    35.    Based on Defendant's decision to tout the Products as trustworthy as well as the fact

14  that the existence of BPA pertains to matters of safety, Defendant had a duty to tell the full truth

15  about the presence (or risk) of BPA.

16    36.    Accordingly, Defendant's marketing and labeling of the Products is materially

17  deceptive, false and misleading given Defendant's omission about the presence (or risk) of BPA as

18  described above.

19                              **CLASS ACTION ALLEGATIONS**

20    37.    Plaintiff brings this action individually and on behalf of all other persons similarly

21  situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the

22  information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action

23  and seeks certification of the following proposed classes (collectively, the Classes):

24          **Class**: All persons within the United States who purchased the
25          Products from the beginning of any applicable limitations period
            through the date of judgment.

26    38.    Plaintiff also brings this action on behalf of the following State Subclass:

27
28

**California Subclass**: All persons who purchased the Products in the State of California from the beginning of any applicable limitations period through the date of judgment.

39.     Excluded from the proposed Classes are the Defendant, and any entities in which the Defendant has controlling interest, the Defendant's agents, employees and its legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and all resellers of the Products.

40.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

41.     Plaintiff further reserves the right to amend the above class definitions as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

42.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the Classes; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail and/or electronic mail or other appropriate digital means, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

43.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

   a.   whether the Products contain lead;

   b.   whether the Products contain BPA;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c.    whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

d.    whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

e.    whether Defendant had been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

f.    whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief;

g.    whether Defendant made misrepresentations and/or failed to disclose material facts concerning the Products;

h.    whether Defendant's conduct was unfair and/or deceptive;

i.    whether Defendant breached implied warranties to Plaintiff and the Class members;

j.    whether Defendant violated California consumer protection, and deceptive practice statutes and are entitled to damages under such state statutes; and

k.    whether Plaintiff and the Class members have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

44.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the Class members because Plaintiff, like other Class members, purchased, in a typical consumer setting, the Products and Plaintiff sustained damages from Defendant's wrongful conduct.

45.    **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class members and have retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

46.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

47.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify the Classes to enjoin Defendant from selling or otherwise distributing the Products until such time that Defendant can demonstrate to the Court's satisfaction that the Products are accurately labeled. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate equitable relief with respect to the Classes as a whole.

48.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.   The damages suffered by each individual members of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b.   Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.   The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d.   Individual joinder of all members of the Classes is impracticable;

e.   Absent a Class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

 f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Defendant.

 g. In the alternative, the Classes may be certified for the following reasons:

  i. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

  ii. Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

  iii. Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

<u>**CAUSES OF ACTION**</u>

<u>**FIRST COUNT**</u>
**California's Unfair Competition Law ("UCL")**
**Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Fraudulent Acts and Practices**
**(On behalf of Plaintiff and the Classes)**

49. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

50. Plaintiff brings this claim individually and on behalf of the Class and California Subclass members.

51. Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

52.     Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, misrepresentations regarding, and failing to disclose, that the Products contain lead.

53.     After reviewing the packaging for the Products, Plaintiff purchased the Products in reliance on Defendant's misrepresentations and omissions.  Plaintiff would not have purchased the Products at all or would have paid less for them if they had known of Defendant's material misrepresentations and omissions regarding that the Products contain lead. Plaintiff and the Class and Subclass members have all paid money for the Products.  However, Plaintiff and the Class and Subclass members did not obtain the full value or any value of the advertised products due to Defendant's misrepresentations and omissions regarding lead.  Accordingly, Plaintiff and the Class and Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's material misrepresentations and omissions.

54.     By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code §17200.

55.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign; and (3) requiring Defendant to issue an effective recall of the Products, providing Class members with full refunds for the purchase of the Products.

56.     As a result of Defendant's conduct, Plaintiff seeks restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

**SECOND COUNT**
**California's Unfair Competition Law ("UCL")**
**Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Unlawful Acts and Practices**
**(On behalf of Plaintiff and the Classes)**

57.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

58. Plaintiff brings this claim individually and on behalf of the Class and California Subclass members.

59. The violation of any law constitutes an unlawful business practice under California Business & Professions Code §17200.

60. Defendant has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making misrepresentations and omissions of material facts, as set forth more fully herein, and violating Cal. Civ. Code § 1750 et seq., and by violating the Song-Beverly Act.

61. By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

62. Plaintiff purchased the Products in reliance on Defendant's material misrepresentations and omissions. Plaintiff would not have purchased the Products at all or would have paid less for them had they known of Defendant's misrepresentations and omissions. Plaintiff and the Class and California Subclass members paid money for the Products. However, Plaintiff and the California Subclass members did not obtain the full value, or any value, of the advertised products due to Defendant's material misrepresentations and omissions regarding the Products. Accordingly, Plaintiff and the California Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's material misrepresentations and omissions.

63. In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; (2) requiring Defendant to conduct a corrective advertising campaign; and (3) requiring Defendant to issue an effective recall of the Products, providing Class members with full refunds for the purchase of the Products.

64. As a result of Defendant's conduct, Plaintiff seeks restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD COUNT
### California's Unfair Competition Law ("UCL")
### Violation of California Business & Professions Code § 17200 *et seq.*,
### Based on Unfair Acts and Practices
### (On behalf of Plaintiff and the Classes)

65.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

66.     Plaintiff brings this claim individually and on behalf of the Class and Subclass members.

67.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unfair conduct.

68.     As more fully described above, Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

69.     Plaintiff and the other Class and Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unfair manufacture, distribution, and sale of the defective and worthless Products.

70.     There is no benefit to consumers or competition from unfairly manufacturing, distributing, and selling the defective and worthless Products.

71.     Plaintiff and the other Class and Subclass members had no way of reasonably knowing that the Products they purchased were not defective because Defendant has exclusive knowledge of the Defect.  Thus, they could not have reasonably avoided the injury each of them suffered.

72.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Class and Subclass.

73.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class and Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

(a) Provide restitution to Plaintiff and the other California Subclass members;

(b) Disgorge all revenue obtained as a result of violations of the UCL;

(c) Pay Plaintiff's and the California Subclass's attorneys' fees and costs.

**FOURTH COUNT**
**Violation of California's False Advertising Law, California Business**
**& Professions Code §§ 17500, et seq.,**
**(On Behalf of Plaintiff And The Classes)**

74.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

75.     Plaintiff brings this claim on individually and on behalf of the Class and Subclass members.

76.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

77.     As set forth herein, Plaintiff purchased the Products based on Defendant's labels, which constituted advertising and which misrepresented and omitted the presence of lead and the presence (or risk) of BPA in the Products.

78.     Plaintiff would not have purchased the Products at all or would have paid less for them but for Defendant misrepresenting and failing to disclose that they contained lead and contained (or risked containing) BPA.

79.     Plaintiff and the Subclass paid money for the Products.  However, they did not obtain the full value or any value of the Products due to Defendant's misrepresentations and omissions regarding the nature of the Products.  Accordingly, Plaintiff and Subclass members suffered an injury in fact and lost money or property as a direct result of Defendant's material misrepresentations and omissions.

80.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

81.     Plaintiff and members of the California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

### FIFTH COUNT
**Breach of Implied Warranty Under the Song-Beverly Act**
**Cal. Civ. Code § 1790 et seq.**
**(On Behalf of Plaintiff and the Classes)**

82.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

83.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

84.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

85.     The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

86.     Plaintiff and the California Subclass members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

87.     Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

88.     Defendant impliedly warranted to retail buyers that the Products were merchantable in that they: (a) would pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to

be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were unsafe and contained lead and contained (or risked containing) BPA.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used, which is consumption by consumers.

89.     Plaintiff and the California Subclass members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

90.     The Products were not altered by Plaintiff or the California Subclass members.

91.     Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and the California Subclass members.

92.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the California Subclass members have been injured and harmed because they would not have purchased the Products or would have paid less for them if they knew the truth about the Products, namely, that they contained lead and contained (or risk containing) BPA.

**SIXTH COUNT**
**Fraud**
**(On Behalf of Plaintiff and the Classes)**

93.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

94.     Plaintiff brings this claim individually and on behalf of the Classes under California law.

95.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

      a.  **WHO**: Defendant made material misrepresentations and omissions of fact in its packaging of the Products omitting the presence of lead, and by omitting the presence (or risk) of BPA.

b. **WHAT**: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products do not contain lead and do not contain (or risk containing) BPA. Defendant omitted from Plaintiff and Class members that the Products contain lead and omitted that the Products contain (or risk containing) BPA. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has omitted from the Products' labeling the fact that they contain lead and omitted from the Products' labeling the fact that they contain (or risk containing) BPA.

c. **WHEN**: Defendant made material misrepresentations and omissions detailed herein, including omitting that the Products do contain lead and do contain (or risk containing) BPA, continuously throughout the applicable relevant periods.

d. **WHERE**: Defendant's misrepresentations and omissions were made on the front labeling and packaging of the Products and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Products are sold online nationwide.

e. **HOW**: Defendant made misrepresentations and omitted from the Products' labeling the fact that they contain lead and contain (or risk containing) BPA. And as discussed in detail throughout this Complaint, Plaintiff and Class members read and relied on Defendant's label misrepresentations and omissions before purchasing the Products.

f. **WHY**: Defendant made misrepresentations and omitted from the Products' labeling the fact that they contain lead and contain (or risk containing) BPA for the express purpose of inducing Plaintiff and Class members to purchase the Products at a substantial price premium or more than they would have

paid had they known the truth about the Products. As such, Defendant profited by selling the Products to at least thousands of consumers throughout the nation, including Plaintiff and the Class members.

96.     As alleged herein, Defendant made these material misrepresentations and omissions in order to induce Plaintiff and Class members to purchase the Products.

97.     As alleged in detail herein, Defendant knew the misrepresentations and omissions regarding the Products were false and misleading but nevertheless made such misrepresentations and omissions on the Products' labeling. In reliance on these misrepresentations and omissions, Plaintiff and Class members were induced to, and did, pay monies to purchase the Products.

98.     Had Plaintiff and the Class members known the truth about the Products, they would not have purchased them or would have paid less for them.

99.     As a proximate result of the fraudulent conduct of Defendant, Plaintiff and Class members paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## SEVENTH COUNT
### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.* (On behalf of Plaintiff and the Classes) (Injunctive Relief Only)

100.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

101.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

102.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

103.    Defendant violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out Products as fit for use as bottles, when in fact the products were defective, dangerous, and useless.

104.    The Defect at issue here involves a critical safety-related component of the Products, and it was unsafe to operate the Products with the Defect.

105.    By displaying the Product and describing its features, the product packaging and Defendant's website implied that the Product was suitable for use as a bottle, without disclosing that the Products had a critical safety-related defect that could result in harm to users of the Product.

106.    Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

107.    Plaintiff seeks injunctive relief.  Given the gravity of these allegations, including that members of the public are at risk of significant injury, Plaintiff has chosen not to wait to send a demand letter before filing suit.  Shortly after filing the complaint, Plaintiff will send Defendant a CLRA letter, complying in all respects with Cal. Civ. Code § 1782(a).  Defendant will be advised that in the event that the relief requested is not provided within thirty (30) days, Plaintiff will amend her complaint to include a CLRA cause of action brought for damages.

## EIGHTH COUNT
### Unjust Enrichment
### (On behalf of Plaintiff and the Classes)

108.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

109.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant under California law.

110.    To the extent necessary, Plaintiff pleads this claim in the alternative under FRCP 8.

111.    Plaintiff and Class members conferred benefits on Defendant by purchasing the Products.

112.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were

unfit for use as bottles.  These omissions caused injuries to Plaintiff and Class members because they would not have purchased the Products if the true facts were known.

113.    Retention of those moneys also is unjust and inequitable because, as alleged above, Defendant commenced an ineffective recall that was calculated to result in no refunds, thereby protecting profits Defendant collected from selling the defective products.

114.    Plaintiff and members of the putative class have been injured as a direct and proximate result of Defendant's inequitable conduct.  Plaintiff and members of the putative class lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

115.    Plaintiff and the members of the Classes have suffered an injury in fact resulting from the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant difference in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court grant Plaintiff and all members of the proposed Classes the following relief against Defendant:

a.  That the Court certify the Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representatives and their attorneys as Class Counsel to represent the members of the Classes;

b.  That the Court declare that Defendant's conduct violates the statutes referenced herein;

c.  That the Court preliminarily and permanently enjoin Defendant from conducting business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

d.  That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

e.  That the Court order Defendant to notify each and every individual who purchased the Products of the pendency of the claims in this action to give such individuals an opportunity to obtain restitution from Defendant;

f.  For an award of compensatory damages, the amount of which is to be determined at trial;

g.  For punitive damages;

h.  That the Court grant Plaintiff'' reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure §1021.5, California Civil Code §1780(d), the common fund doctrine, and/or any other appropriate legal theory; and

i.  That the Court grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated: February 27, 2023                               Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:   */s/ Sean L. Litteral*
                                                     Sean L. Litteral

                                            Yeremey Krivoshey (State Bar No. 295032)
                                            Sean L. Litteral (State Bar No. 331985)
                                            1990 North California Blvd., Suite 940
                                            Walnut Creek, CA  94596
                                            Telephone: (925) 300-4455
                                            Email:  ykrivoshey@bursor.com
                                                      slitteral@bursor.com

                                            *Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Sean L. Litteral declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am an associate at Bursor & Fisher, P.A., counsel of record for Plaintiff. Plaintiff Mikalacki resides in Oakland, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California, as Plaintiff purchased the Products within this District.  Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Class Members in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Oakland, California this 27th day of February, 2023.

                       */s/ Sean L. Litteral*
                       Sean L. Litteral